**STATE of Missouri ex rel. Valiant M. YATES, Phil M. Smith III, and Bernice C. McClellan, Relators-Respondents,**

v.

**Lewis C. MOCK, Secretary of the Board of Directors of Reorganized School District R–I, Callaway County, Missouri, and John Durk, Elmo Young, Wilbur Foster, Jr., William Stewart, Norman Roberts, and Robert Schulze, Members of the Board of Directors of Reorganized School District R–I of Calloway County, Missouri, Respondents-Appellants.**

**No. 24510.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

William C. Whitlow, Fulton, William W. Van Matre, Van Matre & Van Matre, Mexico, for appellants.

Warren D. Welliver, Welliver, Porter & Cleaveland, Columbia, for respondents.

SPERRY, Commissioner.

This mandamus action was instituted at the relation of Valiant M. Yates, Phil M. Smith III, and Bernice C. McClellan residents and voters of Reorganized School District R–1, Callaway County, Missouri. We shall refer to relators as plaintiffs. Respondents are Lewis C. Mock, Secretary of the Board of Directors of said school District, John Durk, Elmo Young, Wilbur Foster, Jr., William Stewart, Norman Roberts, and Robert Schulze, members of the Board of Directors, hereafter referred to as defendants. Plaintiffs sought, by a writ of mandamus, to compel defendants to place on a ballot and submit to a vote of the voters of the above school district, (hereafter referred to as R–1) a proposition to change the boundary of the district. The court issued its preliminary writ and, after a full hearing at which the parties presented the oral testimony of eleven witnesses, and also documentary evidence, the court issued its peremptory writ ordering that the proposition be submitted to the voters of the district at a special election to be held Tuesday, November 30th, 1965. Defendants have appealed.

This paragraph is intended to be a brief historical statement which is explanatory of the remainder of this opinion. Prior to the creation of R–1, May 16th, 1964, Auxvasse school district C–1 consisted of territory in Callaway County, as outlined in a colored map filed as an exhibit by *defendants*. After May 16, 1964, R–1 consisted of lands in Callaway and Audrian Counties, as shown by said map. The map shows no lands in Boone County. Old C–1 is depicted in red, the territory in Callaway and Audrian Counties included in R–1, is shown in green. All of the territory of R–1, to be included in Fulton is contiguous to Fulton. This petition for change of boundaries was served on defendants on July 11th, 1964. The minutes of Board meetings do not make reference to it until, under date of March 22nd, 1965, it was shown that the Board voted to refuse to submit the petition to a vote of the qualified voters

of R–1. It also appears that, on March 8th, 1965, the territory of Toledo school district was added to R–1, by action of defendants. The minutes of the Board meeting under date of March 22nd, 1965, were not approved and signed by the secretary of the Board until some time in July which, according to statements contained in plaintiffs' brief and argument, was three months after the filing of this petition in mandamus.

The court found:

(1) that, on July 9th, 1964, more than 10% of the qualified voters and tax payers of the district, as determined by the total vote cast in the district for County Superintendent of Schools, in the April, 1963, election, filed a petition to change the boundaries of the district (the necessity for said change being stated therein), requesting that the following described real estate:

All of the land within the boundaries of the district, *excluding and excepting* that portion known as Auxvasse Consolidated district C–1, be removed from R–1 and added to Fulton school district 58, an adjoining six director High School district;

(2) that said petition was directed to the secretary of the Board of Directors of said district;

(3) that it was presented to-the Board and to its secretary by the Sheriff of Callaway County, who delivered a copy thereof personally to the then secretary, on July 11th, 1964;

(4) that the same petition was duly and lawfully presented to the Board of Directors, and to the secretary thereof, of Fulton school district 58, Callaway County, Missouri, (hereafter referred to as Fulton);

(5) that the signatures appearing on the two petitions were those of qualified voters, residents, and tax payers of R–1;

(6) that, notwithstanding the petition was received by the Board of Directors and secretary of R–1 on July 11th, 1964, at a time when said Board and secretary could have posted notices and could have otherwise legally advertized the submission of said issue to the voters fifteen (15) days prior to the next annual school election (April 1965), as provided by Section 165.294 RSMo 1959; that Section 165.294, RSMo 1959, was in effect at all times material to this action; (this section now appears in V.A.M.S. as Section 162.431, but that section was not in effect when the petition herein was filed and rejected by defendants); that said officials "failed, omitted, refused and neglected" so to do and that said Board refused to permit the secretary to advertize same;

(7) that the secretary and Board of Directors of Fulton district accepted said petition, lawfully acted thereon in accordance with the provisions of Section 165.294, supra, and the voters of Fulton cast a majority of their votes in favor of the proposed change of boundaries, and that the Board of Fulton declared the proposition "carried"

(8) that the refusal and failure of the secretary of the Board of R–1 to post notices or otherwise advertize said proposed change in the boundary of R–1, and the refusal of the Board of R–1 to order or permit the posting of notices or publication, in accordance with law, was unlawful and arbitrary and was intended to deny, and did deny, the signers of said petition, including relators (plaintiffs herein) their lawful right to have said proposal voted upon at the annual school election held on April 6, 1965, in R–1, contrary to law.

 We have read the entire record in this case and have considered the exhibits filed herein. We hold that the facts, as found by the court, are fully supported by the evidence. From the testimony of the members of the Board, and other evidence, it appears that the members, by a vote of three to two (one abstaining), adopted a resolution which effectually prevented the proposal from being submitted to the voters

for action, as is *clearly* provided in Section 165.294, supra.

Some of the directors professed, in their testimony, to be confused by the language used in the petition setting forth the description of that portion of R–1 which, it was proposed, should be detached from R–1 and included in Fulton. However, there was testimony to the effect that others knew what lands were meant. We note that the secretary, the Board of Directors, and a very large majority of the voters of Fulton, apparently understood the same proposal and approved of the change of boundaries. It also appeared that no part of the boundary of former Consolidated (C–1), old Auxvasse district, was included within the territory affected by the proposed change in boundaries. Former C–1 had existed since long prior to July 11th, 1964, and several witnesses stated that they understood of what it consisted and that it was not affected by the proposed change of boundaries. We think that this *stated* confusion did not in fact exist in the minds of the members of the Board of R–1; and we think that, if some members of the Board were in some doubt as to what the petition, as worded, really meant, there was no sound reason for such confusion. The record contains much evidence tending to show that the Board adopted the resolution not to submit the proposal to a vote because of ill feeling existing between factions whose members were involved; and because some of the Board members felt that the minority who signed the petition (although the number of signatures was sufficient under the statute) were not worthy of being given the opportunity to vote on the petition, although they were clearly entitled to do so under the law.

■ Defendants contend here that the effect of a change of boundaries, such as is mentioned in the petition would, in effect, amount to an annexation of R–1, not a change in boundaries; and that such a result may not be approved under the provisions of Section 165.294, supra. In

England v. Eckley (Mo.) 330 S.W.2d 738, 743, the court held that the provisions of the above section of the statute contemplate the continued existence of both (or all) of the districts affected. In this case, no part of the former C–1, is affected. It had functioned as a school unit prior to the time when the territory here involved was joined with C–1 to make the present R–1 district. Its facilities are still there and in operation, according to the evidence. This contention of defendants must be denied.

■ It is shown in oral testimony and by exhibits, that former "Toledo" district was annexed to R–1 long after the filing of this petition. It is now claimed that, if this change of boundary is made, Toledo will be left alone, separated from R–1 and from Fulton. We must rule this law suit and establish the rights of plaintiffs and defendants as of the date the petition was filed. The fact that defendants wrongfully failed and refused to conform to the law in such cases as this, as clearly set forth in Section 165.294, supra, and instead, deferred *any* action on the petition until *March 22nd, 1965,* fifteen (15) days prior to the annual school election, (and even then may have intentionally concealed their action), and that they, while withholding action on this petition, acquiesced in or permitted the annexation of Toledo, cannot affect the rights of plaintiffs and those of other voters of R–1. If that were the law, then many petitions such as this might be defeated by the expedient of adding new territory to the district involved. However, we do not rule the legal status of the Toledo territory because it is not an issue here.

It is also urged that the future status of territory R–1 located in Boone and Audrian Counties will be left in doubt if this change in boundaries is finally approved. No part of original C–1 is involved in this proposed change of boundaries. No part of that territory will be affected by this change, if it eventually occurs. That clearly appears from the face of the petition.

The peremptory writ was properly issued. Plaintiffs are clearly entitled to the relief sought in this action in mandamus and it is the function of the courts to order defendants to do that which it is their clear legal duty to do. The judgment is affirmed.

However, it is ordered that the cause be remanded to the trial court with instructions that it order that the issue herein be submitted to the voters entitled to vote thereon. We take this action because we think the trial court is, and will be better informed than we are, as to when and how the election shall be held. See England v. Eckley, supra (Mo.) 330 S.W.2d 738, 743.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.