**STATE of Missouri ex rel. ROCK ROAD FRONTAGE, INC., a Corporation, and Continental Oil Company, a Corporation, Relators, Appellants,**

v.

**Earl L. DAVIS et al., Respondents.**

**No. 33414.**

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

**44**

Fordyce, Mayne, Hartman, Renard & Stribling, Harold A. Thomas Jr., St. Louis, Vatterott, Shaffar & Dolan, Glennon R. Vatterott, St. Ann, for plaintiffs-appellants.

Peper, Martin, Jensen, Maichel & Hetlage, William A. Richter, St. Louis, for defendants-respondents.

DOWD, Judge.

This is a mandamus action to compel officials of the City of Bridgeton, a municipal corporation, to issue to relators a special use permit and building permit required by a city ordinance to construct and operate a service station.

After a trial on stipulated facts, the testimony of one witness and a number of documentary exhibits, the trial court refused to order the respondents to issue the necessary permits but ordered the respondents to hold a public hearing on the application of relators for a special use permit. The relators have appealed this judgment.

Rock Road Frontage, a corporation, owns a lot 150′ x 190′ which abuts on the south line of St. Charles Rock Road, a state highway, at a point approximately 300 feet east of its intersection with Natural Bridge Road and Mareschal Lane in the City of Bridgeton. It had contracted to sell this property to relator, Continental Oil Company, a corporation, conditioned upon the obtaining from the City of Bridgeton the necessary permits to erect and operate a gasoline service station.

Bridgeton's Ordinance No. 275 is a comprehensive zoning plan which divides Bridgeton into various districts for residential, commercial and industrial use. By this ordinance all land in Bridgeton was classified and divided into twelve separate districts. Relators' property is located in the "B–2 General Business District." The ordinance permits the erection and operation of an automobile service station provided a special use permit is obtained from the Town Council. This ordinance provides the procedure to be followed for special

use applications. This procedure requires the application to be made to the Town Council which shall forthwith refer the application to the Town Zoning and Planning Commission to investigate and report as to the effect of such building or use upon traffic and fire hazards, the character of the neighborhood and the general welfare of the community. A report and recommendation by the Zoning and Planning Commission is then filed with the Town Council within sixty days. The ordinance then provides:

"Upon receipt of the report and recommendations of the Town Zoning and Planning Commission, the Town Council shall hold a public hearing in relation to the matter, shall give notice of the time and place thereof by causing a notice thereof to be published at least two times in a newspaper printed or published in the Town of Bridgeton. If no newspaper be printed or published in the Town, then in a newspaper of general circulation in the Town of Bridgeton. The first publication of said notice shall be at least fifteen (15) days prior to the day of such hearing.

"After such hearing, the Town Council shall determine whether such building or use will: (a) Substantially increase traffic hazards or congestion; (b) Substantially increase fire hazards; (c) Adversely affect the character of the neighborhood; (d) Adversely affect the general welfare of the community; (e) Overtax public utilities.

"If the Town Council's findings be negative as to all the subjects referred to in (a), (b), (c), (d) and (e) above, then the application shall be granted; if affirmative as to any of the five (5) enumerated subjects, then such permit shall be denied."

Ordinance No. 609 provides in part as follows: " * * * that not more than two such automobile service stations shall be granted permits in any 4 way intersection and not more than one at any intersection which is less than four way. * * "

Relators submitted their application for a special use permit for the construction and operation of a service station on the property. It was referred to the Planning and Zoning Commission and at a meeting on September 12, 1966, the commission voted to recommend to the Town Council that the application be denied and gave as its reason: "The Commission reviewed Town Ordinance No. 609 and feels this is a violation thereof, due to the location of the existing service station on the adjacent lot."

The minutes of the Bridgeton Town Council meeting of October 5, 1966 show that relators' application for a special use permit was denied for the reason that it was in violation of Ordinance No. 609 "due to the location of the existing service station on the adjacent lot." At this meeting Councilman Davis (now Mayor Davis) argued in vain that the Town Council grant the relators a public hearing. The Town Council voted six to two to deny the special use permit without a public hearing being held.

Relators appeared at the Town Council meeting of October 19, 1966 and requested a public hearing on their application for a special use permit and contended that the erection and operation of a service station at this location was not a violation of Ordinance No. 609 and that a public hearing would give relators an opportunity to present the facts to show there is no violation of this ordinance.

The minutes of that meeting showed the following:

"Mayor Swan said he can appreciate what Mr. Thomas said, but he thinks the council felt that since one station is there, that is all that is needed at this time, and that another service station at that intersection was not necessary to serve the needs of the community. So, he continued, regardless of how the ordi-

nance is interpreted, the council went on record to not grant the time for a public hearing, and that is why the check for $100.00 was returned. He added that it would be just a matter of allowing Mr. Thomas to come in, listen to what he has to say, and then turn it down anyway."

The minutes of this meeting further showed: "Councilman Phillips quoted from Planning and Zoning minutes, ' * * * insofar as it conflicts with an ordinance * *.' So, he added, if it is in conflict with the ordinance they would be unable to consider it." A motion to grant a public hearing was defeated by a vote of four to two.

On March 8, 1967, relators applied in writing to the building commissioner of Bridgeton for a building permit for the construction of the service station. Plans and specifications of the proposed structure complying in all respects with the building code and ordinances of Bridgeton accompanied the application. The building permit was denied on the sole ground that a special use permit had not been issued pursuant to the provisions of Section 7 of Ordinance No. 275.

On July 8, 1967, relators filed this mandamus action. On August 10, 1967, the Town Council offered to grant to relators a public hearing on its application for a special use permit on August 30, 1967. On August 11, 1967, relators rejected this offer of a public hearing contending that they were "entitled to the permits immediately as set out in our petition."

It is stipulated that the proposed site of the service station is at a four-way intersection and that Ordinance No. 609 has no relevancy to relators' application and that the Planning and Zoning Commission and the Town Council erroneously determined that the intersection in question was a three-way intersection. It is conceded that the Town Council was therefore in error in denying the application on the basis that it violated Ordinance No. 609.

The issue is whether the writ of mandamus will lie to compel the respondents to issue the necessary permits in these circumstances.

Mandamus will not lie to compel the doing of an act which, instead of being ministerial, is dependent upon the discretion or the judicial determination of the officer. Determination of facts or a combination of facts and law are quasi-judicial functions, and not ministerial and this discretion cannot be coerced by the courts. State ex rel. Hand v. Bilyeu, Mo.App., 346 S.W.2d 221, 227 [6–8].

The Bilyeu case further held at 1. c. 227 that where an official is positively directed to do a certain thing conditioned upon the existence of certain facts and those facts unquestionably exist without possibility of dispute, so that the duty is clear, then mandamus is proper. Stated another way: " '[M]andamus will not lie to control the discretion of a court or judicial officer or to compel its exercise in a particular manner, except in those rare instances when under the facts it can be legally exercised in but one way.' * * *" State ex rel. Burke v. Ross, Mo.App., 420 S.W.2d 365, 368 [8–10].

It is true that discretion cannot be arbitrarily exercised, exercised in bad faith or capriciously exercised. When so exercised, it is regarded that there was no discretion recognized by law and in such case mandamus will lie. State ex rel. Schulz v. Fogerty, Mo.App., 195 S.W.2d 908, 910, 911 [1, 2]. State ex rel. Shartel v. Humphreys, 338 Mo. 1091, 93 S.W.2d 924, 926. However, the applicant for relief by mandamus must prove that he has a clear, unequivocal, specific and positive right to have performed the act demanded, and the remedy will not lie if the right is doubtful. State ex rel. Schulz v. Fogerty, supra, 195 S.W.2d 1. c. 911.

The trial court found that the respondents erred in failing to grant a public hearing on the application for a special use

permit. However, both the Town Zoning and Planning Commission and the Town Council violated Ordinance No. 275. The commission failed to investigate and report to the Town Council as to the effect of the proposed structure upon traffic, fire hazards, character of the neighborhood and general welfare of the community. The Town Council failed to hold a public hearing and make a determination as to the effect the proposed structure would have on the five enumerated subjects. The respondents acted improperly in denying the relators a public hearing where they would have had an opportunity to present evidence that the proposed structure was not a violation of Ordinance No. 609. We are critical of the Town Council for so acting.

■ Despite statements made by the then Mayor Swan, who did not vote at the Town Council meetings of October 5, and October 19, 1966 on the motions to deny the public hearing and the permit, we are convinced that the minutes of the meetings show that the respondents made a mistake as to fact and law in denying the public hearing and permit based upon the mistaken idea that the proposed structure was at a three-way intersection. But we cannot order the respondents to issue these permits because of this error by the Town Council.

The trial court in its memorandum opinion stated in part as follows:

"* * * Inasmuch as there has been no public hearing, there have been no findings whatsoever, and the City Council is still vested with discretion to make a determination as to whether any of the 5 conditions exist, and if so, to deny the application. The Court cannot order respondents to issue a special use permit merely because the Council erred and made no findings. Inasmuch as negative findings could actually exist with respect to all five conditions set forth in the ordinances, discretion still remains with respondents to make findings with respect to such conditions. * * *"

We agree with the reasoning of the trial court.

■ Relators contend that because the Town Council acted arbitrarily and refused to hold a public hearing and made no negative findings on any of the five enumerated subjects they are therefore entitled to a special use permit. We disagree with this contention. The Town Council had no public hearing and made no findings, negative or affirmative. Ordinance No. 275 specifically required the Town Council to make findings on the enumerated subjects. Relators right to a special use permit is conditioned upon negative findings on the enumerated subjects. Only after the Town Council has a public hearing and makes negative findings as to the five enumerated subjects can it be said that relators have a positive right to a special use permit. However, in making these findings the Town Council must not act arbitrarily, capriciously or in bad faith. If the Town Council so acts, relators have an adequate remedy of judicial review under Civil Rule 100, V.A.M.R. The Town Council has not exercised its discretion in accordance with the standards and procedures set up by the ordinance. We cannot direct respondents to exercise their discretion in a certain way. Relators are only entitled to have respondents proceed in good faith compliance with the ordinance. They are not entitled to the relief sought in this action.

Both relators and respondents cite the cases of State ex rel. Ludlow v. Guffey, Mo., 306 S.W.2d 552; State ex rel. Schulz v. Fogerty, supra; State ex rel. Hand v. Bilyeu, supra; State ex rel. Yates v. Mock, Mo.App., 420 S.W.2d 4. An examination of these cases shows that they do not support relators' contention. The issue in the Guffey case was whether the ordinance (which is very similar to the ordinance in the case at issue) prescribed a sufficient standard, i.e., a uniform rule of action to govern the City Council in the exercise of its administrative discretion to determine when and under what circumstances to

grant or deny a special use permit for a filling station or whether the ordinance conferred on the council an unlimited, un-controlled and arbitrary discretion to grant or refuse a special use permit. The court in Guffey held that the ordinance sufficiently circumscribed the legislative discretion dele-gated to the City Council. That is not the issue presented here.

Relators also cited State ex rel. Diners' Financial Corp. v. Swink, Mo.App., 434 S.W.2d 593. The Swink case involves the setting aside of a consent judgment on the 30th day following the rendition of judgment. That court held the relators' motion to set aside the judgment was in-sufficient in that it failed to comply with Civil Rule 75.01, V.A.M.R. requiring a showing of good cause before the trial court can so act. The Swink case is not analogous and does not support relators' contention that they are entitled to the per-mits.

The only relief sought by relators in the trial court was a writ of mandamus to com-pel respondents to issue the permits needed to construct and operate a service station. The trial court denied the relief sought and relators appealed from that denial which is the only issue before this court.

The judgment of the trial court went beyond the issue before it and ordered the Town Council to hold a public hearing on relators' special use permit application immediately upon request of relators. Ordinance No. 275 requires preliminary to the Town Council hearing that the Town Zoning and Planning Commission make an investigation, report and recommendation to the Town Council based upon standards set up in the ordinance.

Therefore, the judgment is affirmed as to the denial of a writ of mandamus and the award of costs, but is reversed in all other respects.

WOLFE, P. J., and BRADY, J., concur.