Patricia Breckenridge, Judge
Representative Courtney Curtis[1] appeals from the circuit court's judgment quashing its preliminary order in mandamus. Rep. Curtis asserts he is entitled to mandamus relief because the Missouri Democratic Party, its chair, Stephen Webber, and the Missouri Secretary of State John "Jay" Ashcroft had a ministerial duty to accept his $100 filing fee and declaration of candidacy for the 14th senate district pursuant to section 115.357.[2]
Section 115.357 provides two methods by which a candidate can tender his or her required filing fee when seeking state office: (1) the candidate can "pay to the treasurer of the state or county committee of the political party upon whose ticket he [or she] seeks nomination"; or (2) the candidate can submit his or her payment "to the official accepting his [or her] declaration of candidacy." Section 115.357.1-.2.
*912 Under the facts and circumstances of this case, Rep. Curtis fails to show he is entitled to mandamus relief pursuant to section 115.357.
First, for a writ of mandamus to issue, the petitioner must establish a public official failed to perform a ministerial duty. In this case, Rep. Curtis must allege and prove the Missouri Democratic Party or its chair is a public official. Although Rep. Curtis contends Missouri courts have long recognized that a non-public official can become a "quasi-public officer" against whom the remedy of mandamus is properly imposed, he cites a case with distinguishable facts and ignores contrary law. Accordingly, the circuit court did not abuse its discretion by quashing its preliminary order in mandamus against the Missouri Democratic Party and its chair.
Second, section 115.357.2 permits a candidate to pay his or her filing fee to the secretary of state, but the record does not reflect Rep. Curtis submitted or attempted to submit his filing fee to the secretary of state. In his petition, Rep. Curtis does not allege any facts establishing he offered payment of the filing fee to an employee of the secretary of state. Likewise, testimony at the hearing does not reflect any secretary of state employee refused to accept Rep. Curtis' filing fee. Consequently, the record does not demonstrate the secretary of state failed to perform the ministerial duty of accepting Rep. Curtis' filing fee in this case. The circuit court, therefore, did not abuse its discretion in quashing its preliminary order in mandamus.
Because Rep. Curtis failed to show grounds for a writ of mandamus against either the Missouri Democratic Party, its chair, or the secretary of state, this Court need not decide or address whether section 115.357 or the First Amendment right to freedom of association gives a political party the right to reject a candidate's fee and thereby prevent that candidate from filing a declaration of candidacy for a primary election. The circuit court's judgment is affirmed.
Factual and Procedural History
On March 27, 2018, Rep. Curtis went to the secretary of state's office to file his declaration of candidacy for the 14th senate district. The Missouri Democratic Party had set up a table in the lobby of the secretary of state's office building. Rep. Curtis presented his $100 filing fee to Elizabeth Zerr, a representative of the Missouri Democratic Party, to meet the requirements of section 115.357, which requires candidates for state offices to pay a filing fee to the political party upon whose ticket they seek nomination. Along with his fee, Rep. Curtis also submitted a receipt form for Ms. Zerr to sign acknowledging payment of the filing fee.
After making a phone call, Ms. Zerr informed Rep. Curtis that she could not take his filing fee because he owed outstanding fees totaling $114,050 to the Missouri Ethics Commission and the Missouri Democratic Party had decided, prior to the opening date for candidate filing, that it did not want any potential candidates who currently owed money to the Missouri Ethics Commission. Rep. Curtis told Ms. Zerr he was in the process of appealing the fees. Ms. Zerr refused to accept the filing fee and took the receipt form without signing it. Rep. Curtis then filled out another receipt form, which was not signed by any representative of the Missouri Democratic Party. Mr. Curtis left his filing fee on the table. Ms. Zerr informed him she would not accept the filing fee and intended to leave the money on a nearby bench.
Mr. Curtis then went into the secretary of state's office to file his declaration of candidacy. Mr. Curtis presented the unsigned *913 copy of the receipt form he filled out and explained the Missouri Democratic Party refused to accept his filing fee. An employee of the secretary of state's office informed Rep. Curtis his declaration of candidacy could not be processed without a signed receipt. Rep. Curtis left the secretary of state's office without attempting to pay his filing fee to any employee in the office.
Mr. Curtis returned to the Missouri Democratic Party's table. He again told Ms. Zerr the fees owed to the Missouri Ethics Commission were under appeal and requested she sign the receipt form. Ms. Zerr again refused to sign the receipt. The secretary of state's office closed at 5 p.m. The Missouri Democratic Party never accepted Rep. Curtis' filing fee, and the secretary of state's office never processed Rep. Curtis' declaration of candidacy.
On April 3, 2018, Rep. Curtis filed a petition for a writ of mandamus against the Missouri Democratic Party, the chair of the Missouri Democratic Party, and the secretary of state. In his petition, Rep. Curtis alleged the acceptance of the filing fee is a ministerial act by the Missouri Democratic Party. In the alternative, he alleged the secretary of state had a ministerial duty to accept the filing fee and tender it to the treasurer of the party under section 115.357. He requested the circuit court issue a writ of mandamus ordering the secretary of state and the chair of the Missouri Democratic Party to accept his declaration of candidacy and filing fee as timely filed.
The circuit court subsequently issued a preliminary order in mandamus. In his answer, the secretary of state denied Rep. Curtis was entitled to mandamus relief because he did not pay the filing fee required under section 115.357.1 before attempting to file his declaration of candidacy. Similarly, the chair and the Missouri Democratic Party denied Rep. Curtis was entitled to mandamus relief and asserted several affirmative defenses, including that the chair was not a "public official" subject to a writ of mandamus and that granting the relief requested by Rep. Curtis would infringe on the Missouri Democratic Party's First Amendment right to freedom of association.
The circuit court conducted a hearing on the matter. Rep. Curtis testified the Missouri Democratic Party would not accept his filing fee and the employees of the secretary of state's office never informed him he could tender the filing fee to that office. Instead, the employees of the secretary of state said the office could not process his declaration of candidacy without a signed receipt. On cross-examination, Rep. Curtis admitted he never attempted to tender any payment-cash or check-to the employees of the secretary of state's office. Likewise, employees from the secretary of state's office testified Rep. Curtis never attempted to tender payment to them.
Following the hearing, the circuit court issued a judgment quashing the preliminary order in mandamus. Relying on California Democratic Party v. Jones , 530 U.S. 567, 574, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000), the circuit court held the Missouri Democratic Party's right to reject Rep. Curtis' filing fee was protected by the First Amendment because the freedom to associate "would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." The circuit court further found it was irrelevant whether Rep. Curtis paid or attempted to pay his filing fee to the secretary of state because the fee would ultimately be submitted to the Missouri Democratic Party.
*914 Rep. Curtis appeals the circuit court's judgment quashing the preliminary order of mandamus. Because the appeal raises the issue of the constitutional validity of section 115.357 as applied, this Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.
Standard of Review
When a circuit court "issues a preliminary order and a permanent writ later is denied, the proper remedy is an appeal." State ex rel. Ashby Rd. Partners, LLC v. State Tax Comm'n , 297 S.W.3d 80, 83 (Mo. banc 2009). In such situations, this Court "reviews the denial of a petition for a writ of mandamus for an abuse of discretion." U.S. Dep't of Veterans Affairs v. Boresi , 396 S.W.3d 356, 359 (Mo. banc 2013). An abuse of discretion "occurs when the circuit court misapplies the applicable statutes." Id.
A writ of mandamus is discretionary, "and there is no right to have the writ issued." State ex rel. Mo. Growth Ass'n v. State Tax Comm'n , 998 S.W.2d 786, 788 (Mo. banc 1999). A writ of mandamus should issue only when a petitioner "allege[s] and prove[s] that he has a clear, unequivocal, specific right to a thing claimed." Furlong Cos., Inc. v. City of Kansas City , 189 S.W.3d 157, 166 (Mo. banc 2006). A petitioner seeking mandamus relief "must show himself possessed of a clear and legal right to the remedy." Id.
Section 115.357
Rep. Curtis asserts he is entitled to mandamus relief because, pursuant to section 115.357, the Missouri Democratic Party and the secretary of state had a ministerial duty to accept his filing fee, which is payable by every candidate for public office. Section 115.357.1 provides, in pertinent part:
Except as provided in subsections 3 and 4 of this section,[3] each candidate for ... state ... office shall, before filing his declaration of candidacy, pay to the treasurer of the state or county committee of the political party upon whose ticket he seeks nomination a certain sum of money.
Section 115.357.5 provides "no candidate's name shall be printed on any official ballot until the required fee has been paid." Section 115.357, therefore, requires payment of the filing fee to the treasurer of the political party before a candidate can file his or her declaration of candidacy and appear on any official ballot.
Section 115.357 provides two methods by which a candidate can tender this required filing fee. First, as previously stated, section 115.357.1 authorizes payment of the filing fee "to the treasurer of the state or county committee of the political party upon whose ticket he seeks nomination." But section 115.357.2 further provides: "The required sum may be submitted by the candidate to the official accepting his declaration of candidacy. All sums so submitted shall be forwarded promptly by the official to the treasurer of the appropriate party committee." Read in the context of chapter 115, the official accepting the declaration of candidacy for state office candidates is the secretary of state. Section 115.357.2, therefore, permits a state office candidate to submit payment of the required filing fee to the secretary of state. Accordingly, pursuant to section 115.357, state office candidates can pay the filing fee to either (1) the treasurer of the political *915 party upon whose ticket they seek the nomination or (2) the secretary of state.
Rep. Curtis contends, because section 115.357 permits candidates to pay the filing fee to either the treasurer of the political party or the official accepting declarations of candidacy, the Missouri Democratic Party and the secretary of state had a ministerial duty to accept his filing fee and, thereafter, his declaration of candidacy. But under the facts and circumstances of this case, the circuit court did not abuse its discretion in determining Rep. Curtis was not entitled to mandamus relief.
The Missouri Democratic Party
It is undisputed Rep. Curtis attempted to pay his filing fee to a representative of the Missouri Democratic Party-the political party upon whose ticket he was seeking the nomination. But the Missouri Democratic Party refused to accept his filing fee on the basis that he owed outstanding fees to the Missouri Ethics Commission.
In his writ petition, Rep. Curtis alleged acceptance of the filing fee is a ministerial act by the Missouri Democratic Party. In its answer, the Missouri Democratic Party asserted it could not be subjected to mandamus relief because neither it nor its chair is a public official.
"Mandamus will issue only when there is an unequivocal showing that the public official failed to perform a ministerial duty imposed by law." Jones v. Carnahan , 965 S.W.2d 209, 213 (Mo. App. 1998) (emphasis added). A ministerial duty is a duty "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." State ex rel. Kansas City Power & Light Co. v. McBeth , 322 S.W.3d 525, 531 (Mo. banc 2010) (internal quotation omitted) (emphasis added). " 'The principle at the heart of [the writ of mandamus] is that public officers are required to perform ministerial duties without any request or demand, and the entire public has the right to that performance.' " Id. (alteration in original) (quoting State ex rel. Twenty-Second Judicial Circuit v. Jones , 823 S.W.2d 471, 475 (Mo. banc 1992) ) (emphasis added). Accordingly, to be entitled to mandamus relief, a petitioner must allege and prove a public official has failed to perform a ministerial duty.
Here, Rep. Curtis did not show the Missouri Democratic Party or its chair is a public official. The writ petition contains no allegations that either the chair or the Missouri Democratic Party is a public official. Rather, in his petition, Rep. Curtis alleges the Missouri Democratic Party is a "mutual benefit corporation"[4] of which Mr. Webber is the chair. Furthermore, a "political party" and a "public official" are defined separately under chapter 115, which pertains to Missouri election laws. Compare section 115.013(19) (defining a "political party" as "any established political party and any new party"), with section 115.013(23) (defining a "public office" as "any office established by constitution, statute or charter and any employment under the United States, the State of Missouri, or any political subdivision or special district, but does not include any office in the reserve forces or the National Guard or the office of notary public or city attorney *916 in cities of the third classification or cities of the fourth classification").
Despite his allegations, Rep. Curtis contends Missouri courts have long recognized that a non-public official can become a "quasi-public officer" against whom the remedy of mandamus is properly imposed. In support of his contention, Rep. Curtis relies on State ex rel. Guion v. Miles , 210 Mo. 127, 109 S.W. 595 (Mo. banc 1908). But Guion does not support such a proposition.
In Guion , the petitioner brought a writ of mandamus to be reinstated as a member of the Democratic city central committee of St. Louis. Id. at 596. Under the statutory scheme in effect, each political party was required to have a general committee for each county. Id. at 599. All members of the general committees were elected biennially at official primary elections. Id. The petitioner had been elected to the committee through a primary election, but members of the committee expelled him pursuant to rules adopted by the committee permitting committee members to be expelled for missing three consecutive meetings. Id. at 596.
In defense to the mandamus writ petition, the respondent asserted the remedy of mandamus was not available to the petitioner because the petitioner was not a public officer. Id. at 605. This Court explained a writ of mandamus "lies to compel the admission or restoration of the party applying to any office or franchise of a public nature." Id. at 606. The Court reasoned:
[I]t is immaterial as to what you may denominate the position of the relator. If the duties imposed upon him either make him a public officer of [sic] a quasi public officer, or if the position is one where in he has the right to perform the duties and functions required of him, and the matter about which he performs the service in [sic] one of public concern, or if the position is one with such characteristics as to make it analogous to that of a public office, then he has the right to invoke the remedy by writ of mandamus for the purposes of restoring him to the rights of which he has been illegally deprived.
Id. at 605-06 (emphasis added). Accordingly, this Court concluded the petitioner had a right to seek a writ of mandamus to reinstate him to his position on the committee, which, at the time, was comprised of elected committee members. Id. at 608.
This Court went on to say the duties incumbent on the petitioner, as a member of the Democratic general committee of the city of St. Louis, "are of a public nature, and deeply concern the public." Id. at 609. The Court further stated:
[T]he duties of the general committee of the city of St. Louis, who call the official primary and recommend and suggest the judges and clerks of such primary elections, are not only of an official character, but as well the duties in which the public are deeply interested in having faithfully and conscientiously performed.
Id.
Rep. Curtis' assertion that the holding of Guion is controlling in this case is not persuasive for three reasons. First, the holding of Guion was dependent on a 100-year-old statutory scheme, the characteristics of the position of St. Louis City's Democratic general committee, and the nature of the duties imposed and the functions required of that position. Rep. Curtis fails to address how the current structure, characteristics, duties, and functions of the Missouri Democratic Party compares with those of the position analyzed in Guion . Instead, he focuses solely on one statutory requirement-that a candidate pay a filing fee to the Missouri Democratic Party.
*917 Second, Rep. Curtis fails to acknowledge the significance of this Court's more recent holding in State ex rel. Tompras v. Board of Election Commissioners of St. Louis County , 136 S.W.3d 65, 67 (Mo. banc 2004), that the office of political party committeewoman is not a public office. Rep. Curtis argues the holding in Tompras is inapplicable because he is seeking to be a candidate for the Missouri State Senate, which is clearly a public office. In determining that a political party committeeperson is not a public officer, this Court made a distinction between "political party office" and "public office." Id. at 66. That distinction is equally applicable to whether a state political party committee and its chair are "public officers" for purposes of mandamus.
Third, and most importantly, a candidate for state office may submit the required filing fee to the secretary of state. Section 115.357.2. As such, the acceptance or non-acceptance of the filing fee by the Missouri Democratic Party is not essential to performing a public function because the secretary of state may receive the filing fee to be forwarded to the treasurer of the party.
Consequently, Rep. Curtis has failed to show a clear and legal entitlement to a writ of mandamus against the Missouri Democratic Party or its chair. Accordingly, the circuit court did not abuse its discretion in quashing the preliminary order in mandamus against the Missouri Democratic Party or its chair.
The Secretary of State
Rep. Curtis further asserts he is entitled to a writ of mandamus because the secretary of state's office refused to accept his filing fee, which it has a ministerial duty to accept pursuant to section 115.357.2. But the record does not reflect Rep. Curtis submitted or attempted to submit his filing fee to the employees of secretary of state's office.
In his petition, Rep. Curtis alleged the following interaction with the secretary of state's office occurred after he left his $100 filing fee on the Missouri Democratic Party's table:
Rep. Curtis proceeded to the Secretary of State's office, presented his declaration under § 115.306, and had it date-stamped.... The Secretary of State's office requested the filing fee payment form, which Rep. Curtis presented. The employee asked Rep. Curtis for a copy of the form signed by a representative of The Missouri Democratic Party, to which he responded that he was refused a signed copy of the form by the party's representative. The Secretary of State's office would not process his declaration of candidacy. He then requested to speak with the Secretary of State to discuss any remedies that might be available. The Secretary of State did not come out to speak with Rep. Curtis.
Such allegations do not indicate that Rep. Curtis submitted his filing fee to the secretary of state's office or that the employees of the secretary of state refused to accept his filing fee.
Testimony at the hearing further reflects Rep. Curtis made no attempt to pay his filing fee to the secretary of state. Although Rep. Curtis testified the secretary of state employee told him he needed a signed receipt from the Missouri Democratic Party and never informed him he could tender the filing fee to the secretary of state's office, Rep. Curtis admitted, on cross-examination, he never attempted to tender any payment-cash or check-to the employees of the secretary of state's office. Employees from the secretary of state's office testified Rep. Curtis never attempted to tender payment to them. Accordingly, the record reflects employees of *918 the secretary of state's office never refused to accept a filing fee from Rep. Curtis.
Again, to establish a right to mandamus relief, a petitioner must make an "unequivocal showing that the public official failed to perform a ministerial duty imposed by law." Jones , 965 S.W.2d at 213. While section 115.357.2 may very well impose a ministerial duty upon the secretary of state to accept filing fees and promptly forward such fees to the treasurer of the appropriate party committee, it is undisputed Rep. Curtis made no attempt to pay the secretary of state. The record, therefore, does not demonstrate the secretary of state failed to perform the ministerial duty of accepting Rep. Curtis' filing fee in this case.[5] Accordingly, the circuit court did not abuse its discretion in quashing its preliminary order in mandamus.
Conclusion
The circuit court quashed the preliminary order in mandamus on grounds that the requested relief would violate the Missouri Democratic Party's First Amendment right to freedom of association. But this Court will not reach constitutional issues if the case can be decided on other grounds. See Watts v. Lester E. Cox Med. Ctrs. , 376 S.W.3d 633, 635 n.2 (Mo. banc 2012). Furthermore, this Court will affirm the circuit court's judgment "if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground." Mo. Soybean Ass'n v. Mo. Clean Water Comm'n , 102 S.W.3d 10, 22 (Mo. banc 2003). "This Court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it." Id.
As the petitioner, Rep. Curtis had the burden of establishing, unequivocally, that the Missouri Democratic Party, its chair, and the secretary of state, as public officials, failed to perform a ministerial duty imposed by law. Jones , 965 S.W.2d at 213. Because Rep. Curtis failed to establish the Missouri Democratic Party or its chair is a public official for purposes of mandamus and because the record reflects the secretary of state never refused to accept a filing fee from Rep. Curtis, the circuit court did not abuse its discretion by quashing its preliminary order in mandamus. The circuit court's judgment is affirmed.
All concur.

Rep. Curtis is currently a duly elected member of the Missouri House of Representatives for the 73rd District.

All statutory citations are to RSMo 2016, unless otherwise noted.

Subsections three and four pertain to candidates who are unable to pay the filing fee and candidates running as independents, candidates of a new party, or candidates for presidential elector. Sections 115.357.3-.4.

A mutual benefit corporation is a type of nonprofit corporation formed under Missouri law. See section 355.881.

In his brief, Rep. Curtis relies on testimony from an employee of the secretary of state's office that it is office policy not to accept filing fees from candidates. Such testimony, however, is irrelevant. Regardless of whether the secretary of state's office would have accepted it, Rep. Curtis still had to tender his filing fee to the secretary of state to establish his clear and unequivocal right to mandamus relief in this case.